## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| PABLO ANTONIO GARCIA,<br><br>                Plaintiff,<br><br>       v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, TRANS UNION, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and SYNOVUS FINANCIAL CORP.,<br><br>                Defendants. | Civil Action No.<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Pablo Antonio Garcia ("Plaintiff"), by and through the undersigned counsel, hereby brings this Complaint and Demand for Jury Trial ("Complaint") against Defendants Equifax Information Services, LLC ("Equifax" or "Defendant"), Experian Information Solutions, Inc. ("Experian" or "Defendant"), Trans Union, LLC ("Trans Union" or "Defendant") (collectively, the "CRA Defendants") and Synovus Financial Corp. ("Synovus" or "Defendant") (all collectively, the "Defendants") alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal law: 15 U.S.C. § 1681 *et seq*.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

3.      Defendants transact business in this District; Defendants purposefully avail themselves of the protections of this District; and Defendants regularly direct business at this District, such that personal jurisdiction is established.

## PARTIES

4.      Plaintiff Pablo Garcia is a natural person who resides in Spring Hill, Florida, within the confines of Hernando County, Florida. Plaintiff is a "consumer" as that term is identified by 15 U.S.C. § 1681a(c).

5.      Defendant Equifax is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Equifax is incorporated in Delaware, and its principal place of business is located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309. Equifax is registered to accept service through Corporation Service Company, located at 2 Sun Court, suite 400, Peachtree Corners, Georgia 30092.

6.      Defendant Experian is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Experian is incorporated in Ohio, and its principal place of business, and also accepts service at 475 Anton Boulevard, Costa Mesa, California 92626.

7.     Defendant Trans Union is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). Trans Union is incorporated in Delaware, and its principal place of business is located at 801 Adlai Stevenson Drive, Springfield, IL 62703. Trans Union is registered to accept service through Prentice Hall Corporation located at 801 Adlai Stevenson Drive, Springfield, Illinois 36106.

8.     Defendant Synovus is a lender incorporated in Georgia, and its principal place of business is located at 1111 Bay Avenue, Suite 500, Columbus, Georgia 31901. Synovus is registered to accept service through Deacon Service, LLC located at 1111 Bay Avenue, Suite 350, Columbus, Georgia 31901. Synovus regularly furnishes consumer credit information to credit reporting agencies. Therefore, Synovus qualifies as a "furnisher" of credit information as that term is contemplated by 15 U.S.C. § 1681s-2.

9.     At all times relevant to this Complaint, the Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

10.     In late 2021, Plaintiff began looking into selling his home with the intention of downsizing.

11.    In addition to downsizing, Plaintiff was excited to take advantage of the low mortgage interest rates. All evidence indicated the market was on the verge of a correction, and mortgage interest rates were likely to be increasing soon.

12.    Plaintiff has always maintained an extremely strong credit profile, and he therefore expected to quickly qualify for the best mortgage interest rate possible after selling his home.

13.    As Plaintiff began conducting his due diligence to try and find a home which fit his specifications, Plaintiff was alarmed to learn that his credit scores had dropped substantially.

14.    Plaintiff utilizes a third-party, non-party Credit Karma, for routine credit monitoring. In or around October 2021, Plaintiff learned of the drop in his credit scores via Credit Karma.

15.    Accordingly, Plaintiff reviewed his credit reports to determine what exactly was causing the drop.

16.    It was at this time that Plaintiff learned each of the CRA Defendants were reporting the Synovus tradeline (Account No. 4165xxxxxxxxxxxx) (the "Synovus Account") as "charged off."

17.    Upon information and belief, an account labeled as "charged off" is substantially harmful to a consumer's overall credit worthiness and credit score.

18.    In reality, Plaintiff had never made a late payment with Synovus, and the Synovus Account was never charged off.

19.    Accordingly, Plaintiff contacted each of the CRA Defendants in or around October 2021 to dispute the inaccuracies being reported by each.

20.    Upon information and belief, each of the CRA Defendants forwarded Plaintiff's dispute(s) to Synovus.

21.    Upon information and belief, Synovus received notice of Plaintiff's dispute(s) from each of the CRA Defendants.

22.    However, after each of the CRA Defendants had completed its reinvestigation(s) of Plaintiff's dispute(s), the inaccurate information remained.

23.    Over the following months, Plaintiff endeavored to resolve this issue with Synovus directly.

24.    Plaintiff contacted Synovus numerous times following October 2021, pleading with Synovus to correct the inaccurate information which was devastating Plaintiff's credit worthiness.

25.    Synovus stood resolute in its unwillingness to correct the inaccurate information it was furnishing to each of the CRA Defendants.

26.    In or around February 2022, Plaintiff obtained updated copies of his credit reports and reviewed each.

27.     Plaintiff was alarmed to learn that each of the CRA Defendants not only continued to report inaccurate information, but had updated Plaintiff's credit report(s) to contain even more inaccurate information.

28.     Confusingly, the reporting by Equifax was contradictory on its face.

29.     Specifically, while Equifax was reporting the Synovus Account as "charged off" in August 2021, it was simultaneously reporting on-time payments for each month thereafter.

30.     Equifax also confusingly reported information about the Synovus Account, in a table labeled "Comments," the comment "Charged off account" in March 2021, April 2021, May 2021, and June 2021, and reported past due amounts in those months of $21,268, $20,964, $20,612, and $20,252, respectively.

31.     To add to this confusion, in a table labeled "Payment History" concerning the Synovus Account, Equifax reported the same four (4) months – March 2021, April 2021, May 2021, and June 2021 – as "Paid on Time."

32.     Equifax also was reporting a past due amount owed of $20,252.

33.     Experian's reporting was similarly inaccurate. Experian was reporting the Synovus Account as "charged off" in August 2021, September 2021, October 2021, November 2021, December 2021, and January 2022, with a past due amount of $20, 394.

34.    Confusingly, Experian also reported payments in August 2021, October 2021, November 2021, and January 2022, despite simultaneously reporting each month as "charged off."

35.    Trans Union's reporting was again, inaccurate. Trans Union was reporting the Synovus Account as "charged off" in August 2021, September 2021, October 2021, November 2021, and December 2021, with a past due amount of $20,394.

36.    Plaintiff was deeply concerned about the effect this inaccurate information would have on his overall credit, and the ramifications concerning his ability to purchase a new home.

37.    However, Plaintiff's window to sell his home was rapidly closing. In April 2022, Plaintiff – an experienced and successful real estate broker – recognized that the market was changing quickly, and that if he did not sell his home soon, he would lose out on a substantial profit.

38.    Accordingly, in or around the first week of May 2022, Plaintiff sold his home in Florida.

39.    Plaintiff was in a precarious position with no place to go. He originally intended to quickly obtain a mortgage after selling his home, but knew that if he applied for a mortgage with his credit as it was, he would receive extremely unfavorable rates – or even be denied.

40.    With no place to call home, Plaintiff and his wife were forced to relocate to a condo the couple owns in Colombia.

41.    The entire process of being forced to move, particularly in a hasty fashion, made Plaintiff feels as though he had been forcefully extradited from his home.

42.    There were serious financial ramifications as well. Plaintiff works as a real estate broker and has been unable to work remotely from Colombia. Accordingly, he has had no income since mid-May 2022. Instead, Plaintiff and his wife have lived only on the equity the couple made from the sale of their home.

43.    Furthermore, Plaintiff is paying nearly $1000/month in storage fees, as the couple's furniture and personal possessions remain in Florida.

44.    After getting settled in Colombia, Plaintiff sought to resolve the harms being caused by the Defendants once and for all.

45.    On or about June 1, 2022, Plaintiff sent each of the CRA Defendants disputes via the mail.

46.    Within his dispute letters, Plaintiff spelled out precisely what each of the CRA Defendants were reporting along with why the information in question was inaccurate.

47.    Plaintiff also provided proof of payment for the month(s) in question, to demonstrate that in fact, the reporting from each of the CRA Defendants was inaccurate.

48.    Moreover, because Plaintiff now possessed serious and sincere doubts concerning Synovus' competency, Plaintiff's dispute included the following plea: "I would like to mention that the furnishers do not provide accurate information; as a result, they are not a trustworthy and reliable source to rely on."

49.    In short, Plaintiff gave each of the CRA Defendants notice that each was reporting inaccurate information, and additional notice that each had reason to question the reliability of the information – and any reinvestigation – from Synovus.

50.    To be safe, even though he did not need to do, Plaintiff simultaneously sent a letter to Synovus, disputing its furnishing of inaccurate information directly. Plaintiff included the same documentation in hopes that the issue would quickly be resolved.

51.    Upon information and belief, each of the CRA Defendants forwarded Plaintiff's dispute letter(s) to Synovus, along with the documentation Plaintiff had provided to each, as required by the FCRA.

52.    Upon information and belief, Synovus received notice of Plaintiff's dispute(s) from each of the CRA Defendants.

53.    The information provided by Plaintiff made clear that Plaintiff had never been late on any payment on the Synovus Account and should have been sufficient for Synovus to reinvestigate and correct its furnishing of inaccurate information to the CRA Defendants.

54.    Moreover, the details provided by Plaintiff to each of the CRA Defendants was on its own sufficient for each of the CRA Defendants to conduct their own reinvestigations and determine that in fact the information being furnished by Synovus was inaccurate.

55.    Over the following month, Plaintiff waited anxiously for responses to his dispute(s) from each of the CRA Defendants.

56.    Having never received a response from any of the CRA Defendants, on or about August 1, 2022, Plaintiff obtained and reviewed copies of his credit reports from each of the CRA Defendants.

57.    Plaintiff was furious to learn that despite his substantial efforts to provide all parties involved with ample information to correct the inaccurate reporting, each of the CRA Defendants continued to report flagrantly inaccurate information in Plaintiff's credit reports.

58.    Equifax continued to report the Synovus Account "charged off" for the month of August 2021 and reported a past due amount of $17,725.

59.    Experian continued to report the Synovus Account as "charged off" for the months of August 2021 and had updated its reporting to now also inaccurate report the months of June 2022 and July 2022 as "charged off."

60.    Trans Union had deleted all payment history with respect to the Synovus Account – including five (5) years of **positive** payment history – but still reported the Synovus Account as "charged off" with a past due amount of $17,725.

61.    Accordingly, upon information and belief, Synovus failed to reasonably reinvestigate Plaintiff's dispute(s) after being notified of such dispute(s) by the CRA Defendants.

62.    Had Synovus reasonably reinvestigated Plaintiff's dispute, as required by federal law, it would have found that Plaintiff's payments were never missed or late, and that Plaintiff's account with Synovus was never "charged off."

63.    Upon information and belief, Synovus sent information to each of the CRA Defendants indicating it had verified the information disputed by Plaintiff as "accurate."

64.    Upon information and belief, each of the CRA Defendants failed to reasonably reinvestigate Plaintiff's disputes.

65.    Instead, each of the CRA Defendants mindlessly parroted the inaccurate information provided by the furnisher, Synovus, without evaluating the definitive evidence Plaintiff had provided in his dispute.

66.    Upon information and belief, the CRA Defendants failed to consider all relevant information when reviewing Plaintiff's disputes.

67.    Upon information and belief, the CRA Defendants have reason to believe that Synovus furnishes inaccurate consumer data with some regularity.

68.    Upon information and belief, the CRA Defendants blindly relied upon Synovus' furnished information despite having reason to know it may be unreliable.

69.    To that end, in the past three (3) years, the Consumer Financial Protection Bureau has received approximately 1,008 complaints concerning Synovus' conduct.

70.    Moreover, as detailed herein, Plaintiff communicated directly to each of the CRA Defendants that there was reason to question Synovus with respect to the information it furnished concerning Plaintiff.

71.    Accordingly, upon information and belief, the CRA Defendants do not maintain and/or employ reasonable procedures to assure maximal accuracy of the consumer reports and consumer information they sell to third parties as required by the FCRA.

72.    Plaintiff had no idea what to do. Despite his best efforts, Synovus insisted upon furnishing inaccurate information to the CRA Defendants, and the CRA Defendants insisted upon reporting inaccurate information in Plaintiff's credit reports.

73.    However, Plaintiff knew he had to do something. His savings were rapidly depleting, and Plaintiff was extremely concerned about what would happen to him and his wife after their bank accounts had emptied.

74.    Therefore, on or about August 23, 2022, Plaintiff applied for a mortgage via non-party Searchlight Lending ("Searchlight"), in hopes that he and his wife could get approval for a loan and find a new home.

75.    Plaintiff was distraught to learn his application was denied after Searchlight obtained copies of his credit reports from each of the CRA Defendants. His average credit score was 624, just shy of the 640 threshold required.

76.    This was particularly infuriating for Plaintiff, given that his credit was exemplary with the exception of the inaccurate Synovus Account.

77.    Throughout this ordeal, Plaintiff has sustained severe emotional distress. Plaintiff's friends and family know him to be an outgoing, lively person. Since he began dealing with the problems detailed herein, Plaintiff has been withdrawn from friends and family, and frequently has no desire to spend time with his loved ones.

78.    Plaintiff has been constantly worried about what will happen when his money runs out. As a result, he is constantly on edge. His friends and family have remarked frequently that he in the last several months he has been short and snappy.

79.    Plaintiff has been extremely depressed as a result of his circumstances. Uncharacteristically, Plaintiff has drank alcohol to excess on more than one occasion as a means to dull the pain and sadness. Recently, Plaintiff consumed four (4) bottles of wine in a single evening, and was so violently ill that he had serious concerns that he inadvertently gave himself alcohol poisoning.

80.    Plaintiff finds himself frequently unable to sleep, so much so that he has started taking sleeping aids. Never before was this a necessity, but when Plaintiff lies his head down to go to sleep lately, his mind simply races, wondering when his problems will be solved.

81.    Plaintiff frequently has no appetite. Over the past several months, Plaintiff has lost nearly twenty (20) pounds due to his general disinterest in eating and taking care of himself.

82.    As a result of the Defendants' actions, inaction, conduct, and misconduct, Plaintiff suffered actual damages, including but not limited to: damage to reputation, severe stress, anxiety, frustration, anger, sleepless nights, loss of appetite, and a substantial amount of wasted time.

## <u>COUNT I</u>
### Equifax's Violations of 15 U.S.C. § 1681e(b)

83.    Plaintiff incorporates by reference paragraphs 1-5, 9-20, 22, 26-32, 36-49, 51-58, and 63-82 as though fully stated herein.

84.    The FCRA requires consumer reporting agencies, like Equifax, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. *See* 15 U.S.C. § 1681e(b).

85.    Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

86.    Upon information and belief, Equifax has been sued or received disputes from other consumers in the past who have alleged its procedures were unreasonable and violative of the FCRA, in a similar manner to the manner alleged herein.

87.    Therefore, Equifax had actual notice of its deficient procedures.

88.    In this case, however, Equifax received actual notice that its procedures were unreasonable as applied to Plaintiff.

89.    It is wholly unreasonable for a consumer reporting agency to maintain procedures which allow it to maintain a consumer's credit file and/or consumer report(s) reflecting that an account has been charged off when it was never charged off.

90.    Specifically, it was wholly unreasonable for Equifax to report that Plaintiff's Synovus Account had been charged off despite Plaintiff providing

Equifax with all necessary information to determine that in fact the Synovus Account had not been charged off.

91.     As a result of Equifax's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

92.     Equifax's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, Equifax is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. *See* 15 U.S.C. § 1681n.

93.     Alternatively, Equifax's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, Equifax is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. *See* 15 U.S.C. § 1681o.

94.     In any event, Equifax is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT II
### Experian's Violations of 15 U.S.C. § 1681e(b)

95.     Plaintiff incorporates by reference paragraphs 1-4, 6, 9-20, 22, 26-27, 33-34, 36-49, 51-58, and 63-82 as though fully stated herein.

96.     The FCRA requires consumer reporting agencies, like Experian, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

97.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

98.    Upon information and belief, Experian has been sued or received disputes from other consumers in the past who have alleged its procedures were unreasonable and violative of the FCRA.

99.    Therefore, Experian had actual notice of its deficient procedures.

100.   In this case, however, Experian received actual notice that its procedures were unreasonable as applied to Plaintiff.

101.   It is wholly unreasonable for a consumer reporting agency to maintain procedures which allow it to maintain a consumer's credit file and/or consumer report(s) reflecting that an account has been charged off when it was never charged off.

102.   Specifically, it was wholly unreasonable for Experian to report that Plaintiff's Synovus Account had been charged off despite Plaintiff providing Experian with all necessary information to determine that in fact the Synovus Account had not been charged off.

103.   As a result of Experian's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

104.    Experian's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, Experian is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

105.    Alternatively, Experian's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, Experian is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

106.    In any event, Experian is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

### COUNT III
### Trans Union's Violations of 15 U.S.C. § 1681e(b)

107.    Plaintiff incorporates by reference paragraphs 1-4, 7, 9-20, 22, 26-27, 35-49, 51-57, 59, and 63-82 as though fully stated herein.

108.    The FCRA requires consumer reporting agencies, like Trans Union, to maintain reasonable procedures to ensure they compile and disburse consumer information with maximal accuracy. 15 U.S.C. § 1681e(b).

109.    Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation, maintenance, and dissemination of Plaintiff's consumer report(s).

110.    Upon information and belief, Trans Union has been sued or received disputes from other consumers in the past who have alleged its procedures were unreasonable and violative of the FCRA.

111.   Therefore, Trans Union had actual notice of its deficient procedures.

112.   In this case, however, Trans Union received actual notice that its procedures were unreasonable as applied to Plaintiff.

113.   It is wholly unreasonable for a consumer reporting agency to maintain procedures which allow it to maintain a consumer's credit file and/or consumer report(s) reflecting that an account has been charged off when it was never charged off.

114.   Specifically, it was wholly unreasonable for Trans Union to report that Plaintiff's Synovus Account had been charged off despite Plaintiff providing Trans Union with all necessary information to determine that in fact the Synovus Account had not been charged off.

115.   As a result of Trans Union's failure to maintain reasonable procedures to ensure maximal accuracy of Plaintiff's consumer information, Plaintiff has suffered statutory and actual damages as detailed herein.

116.   Trans Union's violations of 15 U.S.C. § 1681e(b) were willful. Therefore, Trans Union is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

117.   Alternatively, Trans Union's violations of 15 U.S.C. § 1681e(b) were negligent. Therefore, Trans Union is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

118.    In any event, Trans Union is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## COUNT IV
### Equifax's Violations of 15 U.S.C. § 1681i

119.    Plaintiff incorporates by reference paragraphs 1-5, 9-20, 22, 26-32, 36-49, 51-58, and 63-82 as though fully stated herein.

120.    Under the FCRA, when a consumer reporting agency like Equifax receives a dispute from a consumer that indicates an item of information in its consumer file is inaccurate or incomplete, the consumer reporting agency is required to conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. *See* 15 U.S.C. § 1681i.

121.    Further, consumer reporting agencies are required to record the current status of the disputed information or else delete the disputed item from its file within 30 days of receiving the consumer's dispute.  *See id.*

122.    Consumer reporting agencies are further required to maintain reasonable procedures to prevent the reappearance of inaccurate information, as follows:

> A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph….

15 U.S.C. §1681i(a)(5)(C).

123.   Finally, a consumer reporting agency is required to provide written notice to a consumer of the results of a reinvestigation not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency. *See* 15 U.S.C. §1681i(a)(6).

124.   Upon information and belief, Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate in response to Plaintiff's disputes.

125.   Upon information and belief, Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to record the current status of the disputed information or delete the item from its file and Plaintiff's consumer reports.

126.   Upon information and belief, Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

127.   Moreover, upon information and belief, Equifax violated 15 U.S.C. §1681i(a)(5)(C), as it failed to maintain reasonable procedures to prevent the reappearance of the inaccurate information that Plaintiff disputed in Plaintiff's file and in consumer reports concerning Plaintiff.

128.   Finally, upon information and belief, Equifax violated 15 U.S.C. §1681i(a)(6) by failing to provide notice to Plaintiff of the results of its reinvestigation within the time allotted by statute.

129. Equifax took no action to request additional information from Plaintiff concerning the veracity of Plaintiff's dispute.

130. Upon information and belief, Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

131. As a result of Equifax's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

132. Equifax knew or should have known about its obligations under the FCRA. These obligations are well-established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

133. Therefore, Equifax acted consciously in failing to adhere to its obligations under the FCRA.

134. Equifax's violations of 15 U.S.C. § 1681i were willful. Therefore, Equifax is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681n.

135. Alternatively, Equifax's violations of 15 U.S.C. § 1681i were negligent. Therefore, Equifax is liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681o.

136.   In any event, Equifax is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

**COUNT V**
**Experian's Violations of 15 U.S.C. § 1681i**

137.   Plaintiff incorporates by reference paragraphs 1-4, 6, 9-20, 22, 26-27, 33-34, 36-49, 51-58, and 63-82 as though fully stated herein.

138.   Under the FCRA, when a consumer reporting agency like Experian receives a dispute from a consumer that indicates an item of information in its consumer file is inaccurate or incomplete, the consumer reporting agency is required to conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. *See* 15 U.S.C. § 1681i.

139.   Further, consumer reporting agencies are required to record the current status of the disputed information or else delete the disputed item from its file within 30 days of receiving the consumer's dispute.  *See id.*

140.   Consumer reporting agencies are further required to maintain reasonable procedures to prevent the reappearance of inaccurate information, as follows:

> A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph….

15 U.S.C. §1681i(a)(5)(C).

141.   Finally, a consumer reporting agency is required to provide written notice to a consumer of the results of a reinvestigation not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency. *See* 15 U.S.C. §1681i(a)(6).

142.   Upon information and belief, Experian violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate in response to Plaintiff's disputes.

143.   Upon information and belief, Experian violated 15 U.S.C. § 1681i(a)(1) by failing to record the current status of the disputed information or delete the item from its file and Plaintiff's consumer reports.

144.   Upon information and belief, Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

145.   Moreover, upon information and belief, Experian violated 15 U.S.C. §1681i(a)(5)(C), as it failed to maintain reasonable procedures to prevent the reappearance of the inaccurate information that Plaintiff disputed in Plaintiff's file and in consumer reports concerning Plaintiff.

146.   Finally, upon information and belief, Experian violated 15 U.S.C. §1681i(a)(6) by failing to provide notice to Plaintiff of the results of its reinvestigation within the time allotted by statute.

147.   Experian took no action to request additional information from Plaintiff concerning the veracity of Plaintiff's dispute.

148.   Upon information and belief, Experian violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

149.   As a result of Experian's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

150.   Experian knew or should have known about its obligations under the FCRA. These obligations are well-established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

151.   Therefore, Experian acted consciously in failing to adhere to its obligations under the FCRA.

152.   Experian's violations of 15 U.S.C. § 1681i were willful. Therefore, Experian is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681n.

153.   Alternatively, Experian's violations of 15 U.S.C. § 1681i were negligent. Therefore, Experian is liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681o.

154.    In any event, Experian is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

**COUNT VI**
**Trans Union's Violations of 15 U.S.C. § 1681i**

155.    Plaintiff incorporates by reference paragraphs 1-4, 7, 9-20, 22, 26-27, 35-49, 51-57, 59, and 63-82 as though fully stated herein.

156.    Under the FCRA, when a consumer reporting agency like Trans Union receives a dispute from a consumer that indicates an item of information in its consumer file is inaccurate or incomplete, the consumer reporting agency is required to conduct a reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. *See* 15 U.S.C. § 1681i.

157.    Further, consumer reporting agencies are required to record the current status of the disputed information or else delete the disputed item from its file within 30 days of receiving the consumer's dispute. *See id.*

158.    Consumer reporting agencies are further required to maintain reasonable procedures to prevent the reappearance of inaccurate information, as follows:

> A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph….

15 U.S.C. §1681i(a)(5)(C).

159.   Finally, a consumer reporting agency is required to provide written notice to a consumer of the results of a reinvestigation not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency. *See* 15 U.S.C. §1681i(a)(6).

160.   Upon information and belief, Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate in response to Plaintiff's disputes.

161.   Upon information and belief, Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to record the current status of the disputed information or delete the item from its file and Plaintiff's consumer reports.

162.   Upon information and belief, Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

163.   Moreover, upon information and belief, Trans Union violated 15 U.S.C. §1681i(a)(5)(C), as it failed to maintain reasonable procedures to prevent the reappearance of the inaccurate information that Plaintiff disputed in Plaintiff's file and in consumer reports concerning Plaintiff.

164.    Finally, upon information and belief, Trans Union violated 15 U.S.C. §1681i(a)(6) by failing to provide notice to Plaintiff of the results of its reinvestigation within the time allotted by statute.

165.    Trans Union took no action to request additional information from Plaintiff concerning the veracity of Plaintiff's dispute.

166.    Upon information and belief, Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's consumer file upon reinvestigation of Plaintiff's disputes.

167.    As a result of Trans Union's violations of 15 U.S.C. § 1681i, Plaintiff suffered actual damages which have been further described above.

168.    Trans Union knew or should have known about its obligations under the FCRA. These obligations are well-established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

169.    Therefore, Trans Union acted consciously in failing to adhere to its obligations under the FCRA.

170.    Trans Union's violations of 15 U.S.C. § 1681i were willful. Therefore, Trans Union is liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681n.

171.    Alternatively, Trans Union's violations of 15 U.S.C. § 1681i were negligent. Therefore, Trans Union is liable to Plaintiff for statutory and actual damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681o.

172.    In any event, Trans Union is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

<u>**COUNT VII**</u>
**Synovus' Violations of 15 U.S.C. § 1681s-2(b)**

173.    Plaintiff incorporates by reference paragraphs 1-4, 8-18, 19-53, 57, 61-63, 69-70, and 72-82 as though fully stated herein.

174.    At all times pertinent hereto, Synovus was a "person" as that term is defined by 15 U.S.C. § 168la(b) and a "furnisher of information" providing information about Plaintiff to the three major credit reporting agencies, the CRA Defendants.

175.    Synovus also has an obligation under 15 U.S.C. § 1681s-2(b) to conduct an investigation after a consumer reporting agency notifies it that a consumer disputed the accuracy of the information it furnished; review all relevant information during its investigation of the dispute; report the results of the investigation to the relevant consumer reporting agency; and if the investigation reveals that the furnished information was incomplete or inaccurate, notify every consumer reporting agency that received the deficient information of the investigation results.

176.    Any investigation that reveals the disputed information is incomplete, inaccurate, or unverifiable must be modified, deleted, or permanently blocked. *See* 15 U.S.C. § 1681 s-2(b)(1)(E).

177.    Upon information and belief, the CRA Defendants forwarded Plaintiff's disputes to Synovus in or around October 2021, and again in or around June 2022.

178.    Upon information and belief, Synovus received notice of Plaintiff's dispute(s) from all three CRA Defendants.

179.    Synovus failed to meet its obligation to reasonably reinvestigate Plaintiff's dispute, despite Plaintiff providing all necessary information to conclusively and definitively determine that Plaintiff was not liable for the debt in question.

180.    Upon information and belief, by example only and without limitation, Synovus violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes after being notified of their existence by the CRA Defendants.

181.    Upon information and belief, by example only and without limitation, Synovus failed to review all relevant information while investigating Plaintiff's disputes, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

182.    Upon information and belief, Synovus's actions in the instant matter are representative of its normal policies and procedures.

183.    Upon information and belief, Synovus's regular procedures only require it to complete a cursory review of consumer disputes, regardless of their content, magnitude, or frequency.

184.    Upon information and belief, Synovus's procedures only require it to respond to disputes with basic consumer information without conducting a reasonable investigation of the disputed information.

185.    Synovus took no action to request additional information from Plaintiff concerning the veracity of Plaintiff's dispute.

186.    In sum, Synovus's conduct violated § 1681 s-2(b) of the FCRA.

187.    Synovus willfully and/or negligently violated the foregoing provisions of the FCRA in the following manner:

    a.  By willfully and/or negligently failing to conduct an investigation of the inaccurate information that the Plaintiff disputed;

    b.  By willfully and/or negligently failing to review all relevant information concerning the Account as provided;

    c.  By willfully and/or negligently failing to report the results of its investigation of the inaccurate information to all relevant consumer reporting agencies;

d. By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

e. By willfully and/or negligently failing to modify or delete inaccurate or incomplete information after conducting a reinvestigation;

f. By willfully and/or negligently failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to the relevant consumer reporting agencies; and

g. By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C. § 1681s-2(b).

188. Synovus's violations of 15 U.S.C. § 1681s-2(b) were willful. Therefore, Synovus is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. *See* 15 U.S.C. § 1681n.

189. Alternatively, Synovus's violations of 15 U.S.C. § 1681s-2(b) were negligent. Therefore, Synovus is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. *See* 15 U.S.C. § 1681o.

190. In any event, Synovus is liable for Plaintiff's reasonable attorney's fees and costs, pursuant to 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

191.  Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Pablo Garcia, respectfully requests judgment be entered against Defendants Equifax, Experian, Tran Union, and Synovus, for the following:

h.  Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

i.  Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

j.  Punitive damages pursuant to 15 U.S.C. § 1681n;

k.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

l.  All pre-judgment and post-judgment interest as may be allowed under the law; and

m.  Any other and further relief as the Court may deem just and proper.

Dated: August 29, 2022,                    **THE CONSUMER JUSTICE LAW FIRM**

*/s/ Yosef Steinmetz*
Yosef Steinmetz, Bar No. 119968
8245 N. 85th Way
Scottsdale, AZ 85258
T: (305) 330-3750
E: ysteinmetz@cjl.law

*Attorney for Plaintiff Pablo Antonio Garcia*