UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PABLO ANTONIO GARCIA**,

     Plaintiff,

v.                            Case No. 8:22-cv-1987-WFJ-UAM

**EQUIFAX INFORMATION SERVICES,
LLC**; **TRANS UNION, LLC**; **EXPERIAN
INFORMATION SOLUTIONS, INC.**; and
**SYNOVUS BANK**,

     Defendants.

_____/

## ORDER

Before the Court is Plaintiff Pablo Garcia's Motion to Exclude the Opinions of John Ulzheimer (Dkt. 94), Defendant Synovus Bank's (the "Bank") expert. The Bank has responded in opposition (Dkt. 102), and Mr. Garcia has replied (Dkt. 108). Upon careful consideration, the Court denies Mr. Garcia's Motion.

## LEGAL STANDARD

"*Daubert* requires that trial courts act as 'gatekeepers' to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In carrying

out this role pursuant to Federal Rule of Evidence 702, trial courts consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted). Notwithstanding the foregoing, "[t]he inquiry envisioned by Rule 702 is . . . a flexible one," *Daubert*, 509 U.S. at 595, and courts should not elevate themselves "to the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul—separating the saved from the damned." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1321 (11th Cir. 1999) (citations and internal quotations omitted). A strict inquiry of this nature "would inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury." *Id.*

## DISCUSSION

Mr. Ulzheimer's expert report offers three general opinions: (1) "consumers can default on loans even if they've never missed a payment. As such, reporting a charged off loan to a credit reporting agency as a 'charge off' does not constitute incorrect information" ("Opinion One"); (2) "[the Bank's] investigation responses

to [Mr. Garcia's] credit reporting disputes regarding the subject account were appropriate and in line with industry standards and practices" ("Opinion Two"); and (3) "[Mr. Garcia] did not experience the credit related damages as alleged" ("Opinion Three"). *See generally* Dkt. 94-1 (Mr. Ulzheimer's expert report). Mr. Garcia argues that each of these opinions is impermissible for various reasons. *See generally* Dkt. 94. The Court will address Mr. Garcia's arguments in turn.

## I.   Opinion One

Mr. Garcia first argues that Opinion One contains impermissible legal conclusions about an ultimate issue because it states that "reporting a charged off loan to a credit reporting agency as 'charge off' does not constitute inaccurate information." Dkt. 94 at 7. Mr. Garcia points out that accuracy or inaccuracy is a threshold issue under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b). He consequently maintains that the aforementioned statement "usurps the roles of the Court and the jury[.]" Dkt. 94 at 7.

This argument is unpersuasive. While an expert cannot opine on ultimate issues of law, they "may offer [their] opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied[.]" *Balthazar Mgmt., LLC v. Beale St. Blues Co., Inc.*, No. 17-CV-81214, 2018 WL 6928698, at *4 (S.D. Fla. Oct. 30, 2018). That is what Mr. Ulzheimer did here. Indeed, instead of opining that the Bank's reporting was accurate under the FCRA, Mr. Ulzheimer

opined that the Bank's reporting was not factually "inaccurate" or "incorrect" under industry standards provided by the Consumer Data Industry Association's Credit Reporting Resource Guide ("CRRG"). Dkt. 94-1 at 16–18. The Court is capable of clearing up any jury confusion regarding the relevant meaning of "accuracy" by properly instructing them as to that term's meaning under the FCRA.

Mr. Garcia's second argument—that Opinion One will confuse the jury by usurping the Court's authority to define the applicable legal standards—fares no better. *See* Dkt. 94 at 8–11. The fact that Opinion One fails to address whether the Bank's reporting was misleading (a component of FCRA accuracy) provides Mr. Garcia with ammunition for cross-examination. It is not grounds for exclusion under *Daubert*. *See Brinkman v. Acct. Resol. Servs.*, No. 8:20-CV-2453-VMC-AAS, 2021 WL 4340413, at *3 (M.D. Fla. Sept. 23, 2021) (finding that an expert's "methodology of analyzing a data furnisher's policies and actions by comparing them to standard industry practices is reliable, so long as he is able to explain the basis for his knowledge of industry standards"). Further, as previously stated, the Court will properly instruct the jury on the law. If Mr. Ulzheimer attempts to invade the Court's province at trial, the Court will take appropriate action to limit his testimony.

## II.    Opinion Two

Mr. Garcia contends that, like Opinion One, Opinion Two contains impermissible legal conclusions about an ultimate issue. Specifically, Mr. Garcia avers that it is improper for Mr. Ulzheimer to conclude that the Bank's investigations of Mr. Garcia's credit reporting disputes were "appropriate and in line with industry standards and practices." Dkt. 94 at 11–12. Mr. Garcia notes that this is typically a question for the jury, and that Mr. Ulzheimer's reasoning is circular. *Id.* at 12.

The Court largely disagrees. As an expert with significant experience, Mr. Ulzheimer is allowed to address whether the Bank's "procedures match industry standards" as long as "he dissects the basis for his knowledge of industry standards, explains how he applied his experience to the facts[,] and how such application yields his opinion." *Malverty v. Equifax Info. Servs., LLC*, No. 8:17-CV-1617-T-27AEP, 2019 WL 5549146, at *2 (M.D. Fla. Oct. 28, 2019) (internal quotations and citations omitted). Mr. Ulzheimer accomplishes all these things without attempting to offer legal conclusions concerning "reasonableness" under the FCRA. Of course, the Court recognizes that certain aspects of Opinion Two may be circular in nature. This, however, is another matter to be addressed by robust cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). The Court will not exclude Opinion Two on these grounds.

Mr. Garcia next argues that Opinion Two is unreliable because it fails to account for, or ignores, contradictory facts in evidence. Dkt 94 at 12–16. Mr. Garcia points to Mr. Ulzheimer's failure to address the deposition of William Manning as well as data discrepancies contained within the record. *Id.* He suggests that these omissions render Opinion Two "too unreliable . . . to be considered by the jury." *Id.* at 16.

 "Exactly *how* reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted) (emphasis in original). "If the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id.* at 1261. Experts cannot offer mere *ipse dixit*.

The Court finds that Opinion two is reliable under the guidance provided in *Frazier*. Mr. Ulzheimer (an expert with over thirty years' experience in the consumer credit industry) explains that, as a former employee of Equifax, FICO, and Credit.com, he "worked with, helped train, and supervised employees on

processes and procedures involved in credit reporting, credit report dispute resolution, Fair Credit Reporting Act compliance, credit score model design and development, and consumer credit risk management." Dkt. 94-1 at 3. Mr. Ulzheimer applied this experience, and as well as his intimate knowledge of the CRRG, to review a number of pertinent documents surrounding Mr. Garcia's charge-off. This review of factual evidence led Mr. Ulzheimer to conclude that "[t]here is simply no reason to believe that [Mr. Garcia] was not liable for the subject account" and that the charge off was proper. *Id.* at 19. Accordingly, Mr. Ulzheimer opined that the Bank's verification of the charge off to credit reporting agencies must have been technically accurate and in line with industry standards because the subject account was itself properly charged-off. *Id.*

Mr. Ulzheimer's failure to consider the Manning Deposition and other tangential documents does not undermine the reliability of Opinion Two under Rule 702 or suggest that Mr. Ulzheimer's experience is inadequate. It is important to note that Mr. Ulzheimer is not offering a legal opinion on whether the Bank's investigation was "reasonable" under the FCRA. Instead, his opinion is an application of industry standards to facts that, if proven, might help demonstrate the satisfaction of FCRA standards by implication. This being the case, items that may tend to directly show a failure of FCRA compliance outside of industry standards—such as the aforementioned documents and deposition—would not

materially undercut the reliability of the conclusion that is actually offered in Opinion Two. Mr. Garcia's objection therefore goes to weight. And this is an apparent shortcoming that is appropriately addressed at trial. *See Daubert*, 509 U.S. at 596.

### III.   Opinion Three

As previously mentioned, Opinion Three states that Mr. Garcia "did not experience the credit related damages as alleged." Dkt. 94-1 at 20. Mr. Garcia offers three arguments for the exclusion of this opinion: (1) Mr. Ulzheimer is unqualified to make this opinion; (2) Mr. Ulzheimer has no recognizable methodology in formulating this opinion; and (3) Mr. Ulzheimer relies on speculation, making this opinion unreliable.

Mr. Ulzheimer is qualified to opine on credit related damages. "Qualifications and reliability remain separate prongs of the *Daubert* inquiry that answer two separate questions. A witness is *qualified* as an expert if he is the type of person who should be testifying on the matter at hand." *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 852 (11th Cir. 2021) (emphasis in original). Mr. Ulzheimer is undoubtedly the type of person who should or could testify to the thought process of creditors who were evaluating Mr. Garcia's mortgage and loan applications. As previously noted, Mr. Ulzheimer has over thirty years' experience in the consumer credit industry. Dkt. 94-1 at 3–4. And, in his first four years at

"FICO (formerly known as Fair Isaac Corporation)," Mr. Ulzheimer taught "trade associations, large national mortgage lenders, Fannie Mae, and Freddie Mac how FICO scoring worked, how consumer risk changed as deal variables changed, and how to educate their home-buying customers on the importance of solid credit management." *Id.* His lack of experience in making mortgaged-based credit assessments himself does not render him unqualified. Nor does his apparent failure to specifically address non-qualified mortgages. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1342–43 (11th Cir. 2003) (finding an engineering expert qualified even where his expert report failed to distinguish between things such as "engine pressure ratio" and "fan pressure ratio").

Mr. Ulzheimer's lack of scientific methodology is also no reason to exclude Opinion Three on the basis of reliability. Courts have found that, where an expert's testimony is "based on his experience and research in FCRA matters[,]" the expert's testimony may be reliable even where "'his method is simply an application of his experience with and understanding of the FCRA and the credit reporting industry to the facts at hand.'" *Anderson v. Equifax Info. Servs., LLC*, No. 2:16-CV-2038-JAR, 2018 WL 1542322, at *4 (D. Kan. Mar. 29, 2018) (quoting *Valenzuela v. Equifax Info. Servs. LLC*, No. CV-13-02259-PHX-DLR, 2015 WL 6811585, at *2 (D. Ariz. Nov. 6, 2015)). Opinion Three is based on Mr. Ulzheimer's experience and research in understanding credit score risk-analysis.

His method of reaching the conclusions expressed in Opinion Three are simply an application of this experience and research. Mr. Garcia may challenge it at trial.

Finally, for the reasons explained above, Opinion Three cannot be fairly characterized as "rank speculation and conjecture." Dkt. 94 at 22. The Court recognizes that Mr. Ulzheimer did not speak to the individuals assessing the subject loan applications. He nevertheless reviewed documents assessing Mr. Garcia's credit and income at the time of the subject loan applications, as well as the subject loan denials, and then applied his extensive experience to opine on the thought process behind said denials. The Court will not exclude Opinion Three.

CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1)  Mr. Garcia's Motion to Exclude the Opinions of John Ulzheimer (Dkt. 94) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on April 23, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record